# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNIE GUARINO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 10-3205-CV-S-RED-H |
| | ) | |
| MARTY C. ANDERSON, Warden, | ) | |
| United States Medical Center for | ) | |
| Federal Prisoners, | ) | |
| | ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| CARROLL JAMES FLOWERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 10-3206-CV-S-RED-H |
| | ) | |
| MARTY C. ANDERSON, Warden, | ) | |
| United States Medical Center for | ) | |
| Federal Prisoners, | ) | |
| | ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL DANNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 10-3228-CV-S-RED-H |
| | ) | |
| MARTY C. ANDERSON, Warden | ) | |
| United States Medical Center for | ) | |
| Federal Prisoners, | ) | |
| | ) | |
| Respondent. | ) | |

| | |
|---|---|
| THOMAS BRECK STRATTON, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>MARTY C. ANDERSON, Warden )<br>United States Medical Center for )<br>Federal Prisoners, )<br>)<br>Respondent. ) | No. 10-3248-CV-S-RED-H |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioners, inmates confined in the United States Medical Center for Federal Prisoners, petition this Court for writs of habeas corpus in which they challenge actions of the Bureau of Prisons ["BOP"]. The petitions for habeas corpus relief have been consolidated and referred to the undersigned for preliminary review under 28 U.S.C. § 636(b). Petitioners Dannar, Flowers, and Guarino have prepaid the filing fee and do not request leave to proceed in forma pauperis. Because petitioners have failed to state a constitutional violation, it will be recommended that the petitions for habeas corpus relief be dismissed without prejudice. It will also be recommended that petitioner Stratton be denied leave to proceed in forma pauperis.

After a Show Cause Order was entered, the United States filed its response. Petitioners filed traverses. Thereafter, respondent filed a Response to Petitioner's Traverse. Petitioner Stratton filed a *pro se* reply to that response.

As grounds for relief in habeas corpus, petitioners allege that their due process rights have been violated regarding disciplinary action taken against them at the Medical Center. They contend

that there is no evidence to support them having been disciplined for having contraband in their cell. Specifically, they contend that they should not be held responsible for weapons found hidden in the ceiling tiles above the entry door of their room, which is shared by eight inmates. They contend that there was no evidence presented that this was a common area, or a multi-shared personal area, and that they could not have gained access to this area without violating other prison rules. It is their position that the weapons could only be located by climbing upon lockers or using a step ladder, and that it would require them to break prison rules to be in that area. They contend that this is outside the area for which they were responsible. They deny knowledge of the weapons being present, and state that there is no evidence to support the finding that the weapons were theirs. It is their position that by enforcing the regulations and program statement in this manner, the BOP is requiring them to break the rules regarding boundaries within the institution. All four petitioners seek restoration of their earned good time credits and expungement from their records.

A review of the record indicates that petitioners were among eight inmates who were assigned to a room in which two homemade, ice-pick type weapons were discovered hidden behind electric conduit, in the ceiling about the entry door of the room. The Unit Discipline Officer ["UDC"] found no violation because he believed this area to be a common area, accessible to inmates from another dorm, and recommended expungement. Petitioners were found guilty, however, by the Discipline Hearing Officer ["DHO"], of committing the prohibited act of Possession of a Weapon, Code 104. Each of the four petitioners were sanctioned to, among other punishments, the loss of 41 days of good conduct time. The DHO concluded that the "two weapons were found in the common area of room 222, where all occupants of the room had access to them. All occupants of the room are responsible for all items found in the common area of the room. No

3

special tools were required to retrieve the weapons. The reporting staff member did use a ladder to retrieve one of the weapons, however it is believed that the weapon could be recovered without the ladder." [Respondent's Exhibit B, at 2]. He noted the seriousness of the offense in terms of institutional safety and security, and stated that the sanctions were imposed to express that seriousness.

Respondent asserts that, under the standard enunciated in <u>Superintendent, M.C.I. Walpole v. Hill,</u> 472 U.S. 445 (1985), due process requirements were satisfied in this case because there was sufficient evidence for the DHO to determine that petitioners committed the prohibited act. Respondent contends that, pursuant to 28 C.F.R. § 541.12 and BOP Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, inmates have the responsibility to keep their areas free of contraband, and that petitioners were informed of this responsibility. Respondent asserts that when a weapon is found in an area, there is a presumption that it was placed in that area by the person or persons who live in the area and have control of it. According to § 541.12, each inmate who shares the area is charged with commission of a prohibited act because each inmate has control over the area and has the responsibility to keep that area free from contraband. Respondent also indicates that when inmates arrive at the Medical Center, they are given a copy of the Admission and Orientation Handbook which states, "it is the inmate's responsibility to check his living area immediately after being assigned there, and to report all damage to the Correctional Officer, Case Manager, or Counselor. An inmate may be held financially liable for any damage to his or her personal living area and is responsible for any contraband found within his personal living area." [Respondent's Exhibit 1].

Additionally, respondent contends that petitioners were provided with all of the required due

process procedures to which they are entitled, as enunciated in Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). Specifically, respondent submits that petitioners received advanced written notice of the claimed violation and notice of the DHO hearing well in advance of the hearing; a statement of their rights; a due process hearing; and a written statement of the evidence relied upon, the findings, and the reasons for the disciplinary action taken. Petitioners were given an opportunity to be present, submit evidence, and call witnesses. They appeared before the DHO at the hearings, had their rights reviewed, and indicated that they understood those rights. None of the petitioners chose to present evidence, nor did they request witnesses or staff representation. They all denied knowledge of the weapons. The DHO based his decision on the incident report, photographs of the weapons, a written statement from the correctional officer who discovered the weapons, and petitioners' statements.

It is respondent's position that all inmates are informed upon their admission at the Medical Center that they would be responsible for contraband found in their personal living area. Because the weapons were found in a common area shared by eight inmates, which was part of the personal living area of the eight inmates, respondent maintains that all of the inmates were responsible for items found in the common area and that all occupants had access to the weapons. Respondent submits, additionally, that at the time of the DHO hearing, no single inmate had claimed responsibility for the weapons. Rather, the affidavit in which an inmate attempted to take responsibility for the weapons was written after the DHO hearing was complete. Respondent maintains, further, that the fact that one inmate attempted to take responsibility for the weapons after the incident reports were upheld does not alleviate petitioners' responsibility to ensure that their area is free of contraband. Finally, respondent contends that there is no merit to petitioners' assertion

5

that they suffered an equal protection violation because another inmate had an incident report expunged. Respondent asserts that this has no bearing on their case, and is irrelevant.[1]

In the Response to Petitioners' Traverse, respondent further argues that if the BOP cannot discipline inmates for hiding weapons in the ceiling of any shared space, this is exactly where they will start hiding their weapons and/or contraband. Respondent urges that if the Court were to rule in petitioners' favor, this would increase the danger in the prison because inmates would have the ability to more easily possess dangerous weapons by hiding them in the ceiling tiles, behind walls, or underneath the floor with no fear of discipline.

Having fully and carefully reviewed the record, the Court finds that the standard set forth in Hill has been met in these cases. The law requires, in a prison disciplinary hearing, that the findings of the hearing officer must be supported by "some evidence" in the record. 472 U.S. at 455-56. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. Where the record contains some evidence to support the decision of the DHO, the decision cannot be characterized as arbitrary or an abuse of discretion. Id. at 457.

The evidence against petitioners is meager in this case. It is unfortunate that the UDC originally concluded that the area was a common area with access by other inmates, and recommended expungement. In fact, he stated that "UDC feels this is a common area where these weapons were found. All inmates in Dorm next to this one had just as much access as

---

[1] The Court agrees, and finds it is not necessary to further address this argument.

[these inmates]. UDC recommends expungement." Respondent's Exhibit 1, Attachment B. It should be noted, however, that the DHO reached his ruling after reviewing the evidence, as delineated herein, and that the decision was upheld through the appeals process for all the inmates.

The Court has carefully reviewed the record and finds that there is regulatory and case law to support respondent's position that the fact that contraband was found in petitioners' area is enough to support a finding of guilt, despite their claim that they had no knowledge of it. Under prison policy, inmates are advised that it is their responsibility to "keep [their] area free of contraband." Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>; 28 C.F.R. § 541.12. The principle embodied by this program statement, known as "constructive possession," has been described as having been grounded in notions of collective guilt, i.e., all members of a group are responsible for an offense when the specific offender cannot be identified. <u>See</u> <u>Hamilton v. O'Leary</u>, 976 F.2d 341, 347 (7th Cir. 1992)(Posner, J., dissenting). Under the doctrine of constructive possession, prisoners can be disciplined when contraband is found in their living area, even if the area is accessible to other inmates and even if there is a lack of direct evidence indicating the inmate's guilt. It appears that the Eighth Circuit has applied the constructive possession doctrine to satisfy the "some evidence" standard where only a small number of inmates had equal access to the contraband. <u>Mason v. Sargent</u>, 898 F.2d 679, 680 (8th Cir.1990) (holding that where two inmates had equal access to contraband, "some evidence" standard was satisfied). Several courts outside this circuit have made similar findings. Where the area is under the exclusive domain of a small number of inmates, the courts have found that the some evidence standard is satisfied. <u>See</u> <u>e.g.</u>, <u>Hamilton</u> 976 F.2d at 345-46

(where four inmates had equal access to contraband, "some evidence" standard was satisfied, but stating that "in the abstract," a weapon found in a vent to which 32 inmates had access would not satisfy the "some evidence" test); Harms v. Godinez, 829 F.Supp. 259, 264 (D.Ill.1993) (where six inmates had equal access to contraband, "some evidence" standard was satisfied); but see Cardenas v. Wigen, 921 F.Supp. 286, 289 n. 4 (D.Pa.1996) (where twelve inmates had equal access to contraband, "some evidence" standard was not satisfied); Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001) (where "approximately one hundred inmates" had equal access to contraband, "some evidence" standard was not satisfied). In Hamilton, a case analogous to the instant case, the Court focused on the evidence presented to the disciplinary committee regarding who had access to the cell. The Hamilton Court concluded that the evidence that four inmates had access to a vent accessible from their cell, which created a 25% probability that one inmate was the owner of the weapons, "might be characterized as meager," citing Hill, 472 U.S. at 457, and acknowledged that there was no direct evidence identifying one of the four cell mates as the owner of the contraband. It held, however, that based on the 25% chance of guilt, the record was not so devoid of evidence that the DHO's findings were without support or arbitrary. Hamilton, 976 F.2d at 346.

Other than Mason, a case involving two inmates found guilty of possessing contraband found within a locker in their cell, the Eighth Circuit does not appear to have addressed this issue. The Court has not found nor been directed to any cases in which multiple inmates were found guilty of possession of contraband. Additionally, there does not appear to be any Eighth Circuit law regarding the definition of "common area" and whether the accessibility of the hiding place has any bearing on if all inmates can be deemed to have constructively possessed

8

contraband, nor on the argument petitioners raise that they would be required to break other prison rules to access the contraband.

Based on the record herein, it cannot be said that the area where the contraband was found could be characterized as easily accessible to petitioners. It is also true that there is no evidence tying any individual inmate to the contraband. They all gave statements disavowing any knowledge of the weapons, and they all raise the issue in their petitions that another inmate took responsibility for the weapons. Although his affidavit states that he tried to do this before the DHO hearing, the record indicates that he did so after it was held. The Eighth Circuit concluded in Mason, moreover, that an inmate was properly disciplined when contraband was found in his locker in a two-person cell even through another inmate confessed to placing it there. Mason, 898 F.2d at 680.

In this case, there is nothing to indicate that the DHO knew of the possibility of more than the eight inmates having access to the area, even though this fact was noted by the UDC. It is notable, moreover, that the inmates in this case did not ask for staff representation, nor did they present witnesses or testify on their own behalf. The Court must recognize, however, that the "some evidence" standard is extremely tolerant and is satisfied if there is any evidence in the record that supports the DHO's ruling. Further, there is no question that the standard enunciated in Hill continues to be strictly construed by district courts within the Eighth Circuit. The District Court in Minnesota recently held, in two unpublished decisions that, according to Hill, the findings of a prison disciplinary authority cannot be overturned even where the supporting evidence might be characterized as meager or wholly circumstantial. "Revocation of good time credits is not comparable to a criminal conviction ..., and neither the amount of evidence

9

necessary to support such a conviction ..., nor any other standard greater than some evidence applies in this context." Walker v. Fondren, 2009 WL 3247971, 7 (D.Minn. 2009); Villegas v. Terrell, 2009 WL 2163599, 4 (D.Minn. 2009), citing Hill (citations omitted).

In the instant case, the DHO found that two weapons were found in a common area accessible to all occupants of the room and that they were all responsible for them. He believed they could be recovered without a ladder, although he acknowledged that one weapon was recovered by the use of a ladder. He relied on the incident report, photographs of the weapons, a written statement from the correctional officer who discovered them, and the petitioners' statements in reaching his decision.

Although the Mason case involved only two inmates, case law from other courts indicates that the doctrine of constructive possession has been applied in this context, on an apparent statistical basis, depending on the number of inmates involved. In the instant case, it can be argued that a relatively small number of inmates had access to the common area and, therefore, even if each petitioner did not actually possess the contraband, constructive possession could support the DHO's finding of their guilt. Notwithstanding the fact that other inmates had access to the area where the contraband was found, the weapons were found in an area arguably accessible, albeit inconveniently, by any or all of them. Therefore, the Court finds, under the "some" evidence standard, that petitioners did not suffer a constitutional violation. See Hill, 472 U.S. at 457 ("Although the evidence in this case may be characterized as meager, and there was no direct evidence ..., the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."). Again, as long as there is at least some evidence to support the arbiter's

decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met.

Based on the Court's narrow review of internal prison affairs, there is some evidence to support the disciplinary action taken against petitioners. The Court cannot retry every prison disciplinary dispute, and after careful and thorough review of the record, the Court must conclude that the very low standard of proof has been met in this case.

Additionally, as set forth herein, the record indicates that petitioners were afforded the due process rights to which they are entitled under <u>Wolff</u>. Because petitioners have failed to state a constitutional violation, it must be recommended that the petitions herein for writs of habeas corpus be dismissed without prejudice.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that petitioner Stratton be denied leave to proceed in forma pauperis; it is further

RECOMMENDED that the petitions herein for writs of habeas corpus be dismissed without prejudice.

<u>  /s/ James C. England  </u>
JAMES C. ENGLAND
UNITED STATES MAGISTRATE JUDGE

<u>Date:   11/15/10         </u>

11